## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TRINA K. CHANEZ,

     Plaintiff,

v.                                   No. _____

MEGAN J. BRENNAN,                   **JURY TRIAL DEMANDED**
Postmaster General;
HEATH W. HODGES, in his
individual and official
capacities; ROBERT L. PONCE,
in his individual and official
capacities; and RICHARD OYER,
in his individual and official
capacities,

     Defendants.

## COMPLAINT

COMES NOW the Plaintiff, Trina K. Chanez (hereinafter referred to in this document as "Plaintiff"), by and through her counsel, CARRILLO LAW FIRM, P.C. (Raúl A. Carrillo, Jr. and Steven E. Jones), and hereby submits her Complaint, as follows:

### Summary

1.      This is an action brought by Plaintiff, Trina K. Chanez, against Defendants Megan J. Brennan as Postmaster General, Heath Hodges, Robert Ponce, and Rick Oyer for violations of her constitutional and other rights stemming from sexual assault, sexual battery, and sexual harassment committed against her by her supervisor, Defendant Hodges, in the workplace, and resulting reprisal and discrimination committed by all Defendants.

2.      Defendants allowed the incidents in the Complaint to occur, did nothing to prevent these incidents, and failed to take meaningful or appropriate action in response to these incidents.

**Parties**

3.      Plaintiff is a resident of Alamogordo, New Mexico.

4.      At all times relevant to this Complaint, Plaintiff has been employed by the United States Postal Service, Alamogordo Post Office, located at 930 East 12th Street, Alamogordo, New Mexico 88310.

5.      Plaintiff is currently in Leave Without Pay (LWOP) status.

6.      Defendant Megan J. Brennan is the Postmaster General of the United States Postal Service ("USPS").  She is the responsible agency official regarding this Complaint and is being sued in her capacity as the responsible agency official on behalf of the United States Postal Service as Plaintiff's employer.

7.      At the time of the sexual harassment, sexual assault, discrimination, reprisal and resulting damages, Defendant Heath W. Hodges was the Postmaster of the Alamogordo Post Office.

8.      Upon information and belief, Defendant Hodges was removed from the Alamogordo Post Office and placed at the Ruidoso Post Office.

9.      Upon information and belief, Defendant Hodges was terminated from employment due (in whole or part) to the allegations listed in this Complaint, and then he grieved his termination, was reinstated, and was placed in the Las Cruces Main Post Office.

10.      Upon information and belief, Defendant Hodges is now working at the Truth or Consequences Post Office.

11.    Defendant Hodges is being sued in his individual and official capacities.

12.    Upon information and belief, Defendant Ponce is the Postmaster of the Silver City, New Mexico Post Office, Acting Post Office Operations Manager, and an acting second-level supervisor responsible for overseeing post offices including, but not limited to, the Alamogordo Post Office.

13.    Assuming, arguendo, that USPS asserts that he was acting outside the course and scope of his employment, Plaintiff hereby sues Mr. Ponce in his individual capacity, in order to preserve any rights she may have against him due to the wrongdoing alleged in this lawsuit.

14.    Mr. Ponce is also being sued in his official capacity as Plaintiff's second-level supervisor or a similar job function.

15.    Upon information and belief, Defendant Oyer ("Rick Oyer") is the Officer-in-Charge (OIC) of the Sandia Park, New Mexico Post Office and is the New Mexico union representative for the National Association of Postal Supervisors (NAPS).

16.    Assuming, arguendo, that USPS asserts that he was acting outside the course and scope of his employment, Plaintiff hereby sues Defendant Oyer in his individual capacity, in order to preserve any rights she may have against him due to the wrongdoing alleged in this lawsuit.

17.    Defendant Oyer is also being sued in his official capacity as a USPS employee to whom Plaintiff was referred in order to seek possible union representation with regard to her complaint against Defendant Hodges.

18.    Defendant Oyer took advantage of Plaintiff's trust and, upon information and belief, shared information with others in a manner directly detrimental to Plaintiff's constitutional, statutory, common-law, or other rights.

**Jurisdiction**

19.     This Court has original jurisdiction pursuant to several federal laws including (but

not limited to) Tile VII of the Civil Rights Act of 1964 (as amended), the Americans with

Disabilities Act, the Rehabilitation Act, and other federal laws governing discrimination,

retaliation, sexual harassment, and related matters.

20.     The Court has supplemental jurisdiction over Plaintiff's state law claims.

**Venue**

21.     Venue is proper in the United States District Court for the District of New

Mexico, given that Plaintiff was employed by the United States Postal Service in Alamogordo,

New Mexico at all times relevant to this Complaint.

**Exhaustion of Administrative Remedies**

22.     Plaintiff timely completed pre-complaint counseling and then filed EEO case

number 4E-852-0171-16 on September 15, 2016.

23.     Plaintiff received the investigative file for EEO case number 4E-852-0171-16 in

late-January or early-February 2016.

24.     Plaintiff requested an administrative hearing with the Equal Employment

Opportunity Commission for EEO case number 4E-852-0171-16 on March 10, 2017; however,

the Equal Employment Opportunity Commission has completely failed to act on Plaintiff's

complaint.

25.     Despite that over a year has passed, an administrative law judge has not been

assigned to EEO case number 4E-852-0171-16, and Plaintiff has received no communications

from the EEOC regarding the case.

26.     The EEOC has not acted within 180 days as required by law.

27.    Plaintiff requested a final agency decision from both USPS and the EEOC, but neither has provided a final agency decision.

28.    Therefore, Plaintiff has the right to file this lawsuit at the present time on this EEO complaint.

29.    Plaintiff timely completed pre-complaint counseling and then filed EEO case number 4E-852-0106-17 on May 23, 2017.

30.    Plaintiff received the investigative file for EEO case number 4E-852-0106-17 in late-October 2017.

31.    Plaintiff received the final agency decision for EEO case number 4E-852-0106-17 in late-December 2017.

32.    Therefore, Plaintiff has the right to file this lawsuit at the present time on this EEO complaint.

33.    With regard to the remaining claims contained herein, exhaustion of administrative remedies is not required.

**Factual Allegations Common to All Claims**

34.    As of 2016, Plaintiff was a supervisory employee at the Alamogordo Post Office.

35.    Plaintiff had no significant absences prior to the damages complained of in this Complaint.

36.    Plaintiff had a reputation for her work ethic and attention to detail during her employment with USPS, based on the testimony of a local Postmaster and, upon information and belief, statements of other USPS employees.

37.    Plaintiff has never had any significant disciplinary history.

38.     Plaintiff's employment with USPS has been satisfactory or better during the entirety of her employment with USPS.

39.     At the time of the incidents described in this Complaint, USPS had several policies and procedures regarding non-discrimination and related matters in the workplace.

40.     USPS policies include, but are not limited to, sexual harassment reporting, prohibition and reporting of violence in the workplace, investigations of employee misconduct, administrative leave, and several other related matters.

41.     Some or all of the above policies and procedures were clearly posted in Plaintiff's workplace and throughout USPS facilities nationwide as of April 2016.

42.     It was clear to Plaintiff's supervisor and other superior USPS officials that the above policies and procedures should be followed and that employees should be protected in the workplace.

43.     USPS and Defendants failed to abide by their obligations under USPS policies and procedures governing non-discrimination and related matters in the workplace.

*Complaint 4E-852-0171-16*

44.     Beginning in late-2015 or early-2016, Defendant Hodges (who was then Plaintiff's supervisor at the Alamogordo Post Office) conducted himself unprofessionally by joking about employees.

45.     Defendant Hodges' behavior at the workplace included inappropriate and sexually suggestive comments regarding subordinate employees.

46.     Plaintiff witnessed Defendant Hodges' comments described above.

47.     Beginning in late-2015 or early-2016 and ongoing until his removal from the Alamogordo Post Office, Defendant Hodges made sexual comments to Plaintiff regarding her looks, including staring her up and down with elevator eyes saying "mmmm."

48.     Defendant Hodges would ask how Plaintiff was doing and when he would say that she was good, he would reply "I bet you are."

49.     Defendant Hodges would constantly say "I can't control myself when I'm around you," referring to Plaintiff.

50.     When Plaintiff arrived to work in a dress on or about January 25, 2016 because she had to attend a relative's funeral that day, Defendant Hodges commented that Plaintiff had "amazing legs."

51.     Defendant Hodges also made comments in the workplace such as "damn you're hot" and "those lips," referring to Plaintiff and her lips.

52.     Defendant Hodges would look at Plaintiff's breasts in the workplace.

53.     Defendant Hodges also showed Plaintiff a nasty photo in the workplace.

54.     Defendant Hodges would come in earlier and earlier and stay late when Plaintiff was working.

55.     Defendant Hodges would touch Plaintiff's shoulders, arms, and legs; and Defendant Hodges would stand too close to Plaintiff and rub up against her.

56.     One or more of Defendant Hodges' comments above placed Plaintiff in immediate apprehension of sexual battery.

57.     Defendant Hodges made sexual harassment a term or condition of Plaintiff's employment.

58.     Defendant Hodges knew that his conduct was both unwelcome and inappropriate, yet he continued to take advantage of Plaintiff through their employment relationship.

59.     At no time did Plaintiff welcome the sexual harassment committed by Defendant Hodges.

60.     On or about April 1, 2016 at the workplace, Defendant Hodges shoved Plaintiff up against the wall and grabbed her between her legs and on her breast and kissed her.

61.     The above conduct was not welcome by Plaintiff, nor was it appropriate behavior for Plaintiff's supervisor, regardless of whether or not it was welcome.

62.     On April 6, 8, 11, and 14, 2016, Defendant Hodges sent Plaintiff texts stating "I check you out from the moment you get here until you leave"; "You are amazing I know for some reason things changed because you are avoiding me"; "I get all messed up when I'm around you"; and "I will behave and not joke to help you with the Grievance Arbitration Tracking System (GATS) and Performance Evaluation System (PES)."

63.     Plaintiff is still in possession of one or more of the above text messages.

64.     One or more of Defendant Hodges' comments above placed Plaintiff in immediate apprehension of sexual battery.

65.     On unspecified dates, Defendant Hodges retaliated against Plaintiff for opposing his discrimination, harassment, and hostile work environment created by Defendant Hodges.

66.     Defendant Hodges began to request more work of Plaintiff in less time.

67.     Defendant Hodges told Plaintiff to report to work on Saturday so that the 204B (acting supervisor) (Josh Gomez, a male employee) could go home.

68.     Defendant Hodges assigned Plaintiff to work 12+ hours, which was beyond her scheduled time of 5:30 a.m. to 2:30 p.m.

69.     Defendant Hodges began to assign Plaintiff cash drawer audits without assisting her by having the 204B come in early.

70.     The 204B received two days off while the Plaintiff was forced to work six days a week.

71.     Plaintiff also texted Defendant Hodges about workplace issues, but he no longer would respond.

72.     Defendant Hodges began deleting Plaintiff's clock rings for Tuesday and putting them in on Saturday.

73.     Defendant Hodges began to input Plaintiff's time for an hour lunch when she never went to lunch, despite the fact that Plaintiff asked Defendant Hodges to cease and desist from this behavior.

74.     Defendant Hodges began deleting Plaintiff's hours on Tuesdays and only putting in 8 hours for Plaintiff on Saturdays.

75.     Plaintiff also was subjected to additional scrutiny when requesting time off for personal reasons, whereas similarly situated employees were not subjected to the same scrutiny.

76.     On unspecified dates, Plaintiff communicated with Defendant Hodges and asked him to stop and put everything behind them.

77.     Defendant Hodges did not stop his discriminatory and retaliatory behavior.

78.     On or about May 2, 2016, Plaintiff (crying) called Post Office Operations Manager (POOM) Defendant Ponce to communicate allegations of discrimination, harassment, and hostile work environment committed by Defendant Hodges.

79.     Defendant Ponce said, "What did you do to give [Defendant Hodges] the wrong impression?"

80.     Defendant Ponce advised Plaintiff to try to work things out with Defendant Hodges.

81.     Defendant Ponce did not take corrective action to address the situation, despite clear signs that his subordinate employee (i.e., Plaintiff) was being subjected to discrimination, harassment and hostile work environment in the workplace.

82.     During the conversation, the Defendant Ponce implied that Plaintiff was at fault for the sexual harassment committed against her.

83.     Plaintiff was obviously shaken and upset by Defendant Ponce's comment, yet Defendant Ponce told Plaintiff that it was *her* responsibility to contact Defendant Hodges (the assaulter) and to confront him directly.

84.     Plaintiff was shocked by Defendant Ponce's comment and promptly ended the call due to Defendant Ponce's egregious and inappropriate behavior.

85.     In light of the above, Defendant Ponce was involved in the wrongdoing committed against Plaintiff, and Defendant Ponce should not have been involved in investigation of Plaintiff's complaints, given that he was a part of the wrongdoing.

86.     Defendant Brennan / USPS failed to take appropriate action in the handling of Plaintiff's complaints of sexual battery, sexual assault, discrimination, and retaliation.

87.     Defendant Hodges could hear Plaintiff's May 2, 2016 phone call with Defendant Ponce.

88.     Despite the fact that it was excruciating to do so, Plaintiff did, in fact, contact Defendant Hodges in person and told him that she would quit if he did not stop harassing her.

89.     Plaintiff informed Defendant Hodges that he needed to leave her alone and stop harassing and discriminating against her, in order for her to be able to continue working.

90.     After Defendant Hodges heard Plaintiff's May 2, 2016 conversation, and after Plaintiff confronted Defendant Hodges immediately after her conversation with Defendant Ponce, Defendant Hodges had an increased incentive to retaliate against Plaintiff, due to her complaints of discrimination.

91.     Defendant Hodges took retaliatory action against Plaintiff in response to her May 2, 2016 phone call with Defendant Ponce

92.     In mid-May 2016, Plaintiff contacted a local Postmaster in La Luz, New Mexico out of desperation, due to the fact that no other USPS employees were responding adequately regarding Defendant Hodges' assault and civil rights violations (including the Post Office Operations Manager (POOM) (Defendant Ponce), Human Resources (Lerene Wiley), and the NAPS Union Representative (Defendant Oyer)).  The complete lack of response by USPS at a meaningful time and place caused damage to Plaintiff.

93.     The La Luz Postmaster was taken aback by the information shared with him, and he was surprised that none of the above-named persons had responded adequately or appropriately to Plaintiff's complaint of sexual assault and related discriminatory activities.

94.     On May 16, 2016, the La Luz Postmaster contacted Human Resources (Lerene Wiley) and Labor Relations (Marlene Benavidez) to report Plaintiff's allegations of sexual harassment and related discriminatory activities.

95.     Somehow, Defendant Ponce was forwarded a copy of the La Luz Postmaster's email.  Although Defendant Ponce was the acting POOM, he was also directly involved in the wrongdoing committed by Defendant Hodges, and therefore he was compromised in his ability to conduct a fair investigation.

96.     Defendant Ponce told the La Luz Postmaster that "we will handle [the investigation] it its entirety and any allegations made."

97.     The above comment from Defendant Ponce was an inappropriate comment, given that he was compromised in his ability to conduct a fair investigation.

98.     Defendant Ponce should not have undertaken to oversee the investigation of Plaintiff's complaints, given that he was compromised in his ability to do so fairly and adequately on behalf of Defendant Brennan / USPS.

99.     Defendant Brennan / USPS knew or should have known that Defendant Ponce was not to handle the investigation of Plaintiff's claims.

100.    Defendant Brennan / USPS failed to take appropriate action to investigate Plaintiff's claims.

101.    Despite the above mishandling of the investigation, USPS still found sufficient evidence that Defendant Hodges had in fact sexually assaulted and sexually battered Plaintiff.

102.    On or around June 2, 2016, Defendant Hodges was removed from his post as Postmaster at the Alamogordo Post Office.

103.    On or around June 2, 2016, due to the severity of the violation committed by Defendant Hodges, the Postal Inspectors should have been informed of the battery and discriminatory activities committed by Defendant Hodges immediately.

104.    However, no action was taken by the Postal Inspectors until more than one month later, in July 2016.

105.    After the incidents occurred with Defendant Hodges, Plaintiff applied for two open positions (Alto Postmaster and TorC Postmaster) but was not interviewed for these positions.

106.    Plaintiff was equally qualified or more qualified than the applicant that was selected for the TorC Postmaster position and the Alto Postmaster position.

107.    Plaintiff has suffered severe mental and emotional distress and suffers from "acute stress disorder" due to the incidents that occurred with Defendant Hodges and Defendant Ponce, as well as the overall lack of response from Plaintiff's employer to the situation.

108.    Plaintiff was forced to call in sick in order to avoid having to deal with Defendant Hodges or the memory of the incidents that occurred.

109.    Plaintiff also experienced marital problems because she felt afraid to tell her husband of what occurred with Defendant Hodges.

110.    Plaintiff expects to require additional counseling and medical treatment due to the trauma that she suffered as a result of Mr. Hodge's behavior.

111.    After the discrimination and retaliation began, USPS directed Plaintiff to file a complaint with the National Association of Postal Supervisors (NAPS) union representative.

112.    Plaintiff went to Defendant Oyer, the National Association of Postal Supervisors Union Representative and OIC of Sandia Park Post Office, to complain of the discrimination and retaliation committed by Heath Hodges.

113.    Defendant Oyer wrongfully used his contact with Plaintiff in order to gather insight and information into Plaintiff's case, and then subsequently went on to side with and/or represent Defendant Hodges with respect to these proceedings.

114.    After gathering the above information, Defendant Oyer told Plaintiff that she would not receive any money and that USPS employees have affairs with each other all the time.

115.    The above comments were discriminatory and retaliatory comments by Defendants, including Defendant Oyer and Plaintiff's employer, Defendant Brennan / USPS.

116.     This incident with Defendant Oyer reflects a complete absence of a fair process by USPS and/or Defendant Oyer, which is also evidence that USPS created and/or tolerated discrimination and retaliation in the workplace.

117.     Upon information and belief, Defendant Oyer did, in fact make a derogatory comment against Plaintiff to a USPS Postmaster investigating allegations against Defendant Hodges.

118.     Plaintiff did not know Defendant Oyer before the incidents described in this Complaint occurred, and therefore, upon information and belief, Defendant Oyer's derogatory comment was based on information he received from a source close to the investigation.

119.     Upon information and belief, Defendant Hodges provided information to Defendant Oyer regarding Plaintiff's complaints against Defendant Hodges.

120.     Plaintiff filed a police report with the Alamogordo Police Department on or about August 15, 2016.

121.     The police report document further substantiates Plaintiff's claims regarding the tortious actions committed by Defendant Hodges.

122.     Due to the effects of the sexual harassment and assault committed by Defendant Hodges in the workplace, as well as USPS' mishandling of the entire process, Plaintiff began to miss work due to the medical and other complications that arose due to post-traumatic stress disorder and other medical issues.

123.     On September 30, 2016, Plaintiff received notice that she had been placed on AWOL status, despite the fact that her supervisor, Steve Manning, had actual notice of her pending sick leave request and doctor's note, as well as other evidence to be determined at trial.

124.   Mr. Manning did not allow Ms. Chanez to take sick leave, despite a doctor's note explaining her medical condition due to sexual assault and harassment while working for USPS. These actions are further evidence of retaliation and discrimination against Plaintiff.

125.   Since Plaintiff's absence from employment began, as a result of injuries inflicted by Heath Hodges and ratified by other employees associated with the United States Postal Service, Plaintiff has suffered additional losses, including loss of overtime pay opportunities.

126.   Plaintiff regularly worked overtime as part of her job, and since her absence from employment began, Plaintiff has been denied the opportunity to work and earn overtime. Plaintiff is entitled to back pay and front pay for lost overtime opportunities.

127.   Since Plaintiff's absence from employment began, as a result of injuries inflicted by Heath Hodges and ratified by other employees associated with the United States Postal Service, Plaintiff has suffered additional losses, including loss of annual and sick leave.

128.   Plaintiff is entitled to restoration of annual and sick leave or cash payment for loss of such leave.

*Complaint 4E-852-0106-17*

129.   Plaintiff's employer subjected her to retaliation for filing an EEO complaint by refusing to grant administrative leave pursuant to USPS Regulation 519 (and subsections) or otherwise interact with her regarding her employment.

130.   Plaintiff requested, at least three times to various USPS supervisors in her chain of command and the USPS law department, that she be given administrative leave status, with pay retroactive to the date of her inability to report to work, pending investigation into the allegations made against Defendant Hodges, pursuant to USPS regulations, including USPS Policy No. 519.24.

131.    However, no USPS representative responded to her request in a way meaningful to resolution of this case.

132.    Plaintiff participated in the District Reasonable Accommodation Committee (DRAC) process.

133.    However, Plaintiff was denied the opportunity to fully participate in the DRAC process.

134.    For instance, at the reasonable accommodation meeting, the Committee made several inappropriate comments or suggestions, including stating that (1) Plaintiff could not be reassigned to a vacant position outside of the Alamogordo Post Office, even though her injuries directly relate to the emotional distress she suffered at the Alamogordo Post Office; that (2) Plaintiff was unable to work in any capacity; and that (3) the duration of Plaintiff's expected inability to work was unknown.

135.    Plaintiff's words were taken out of context during the DRAC process, as she stated that she likely would be able to return to work at some point if she were allowed to return to a position away from the site of the workplace assault committed by her former supervisor, Defendant Hodges.

136.    The DRAC committee told Plaintiff that it could not grant Plaintiff a transfer and that she would have to compete for any position.

137.    Meanwhile, Defendant Hodges was reassigned to work at the Ruidoso Post Office.

138.    Defendant Hodges was terminated from employment in 2016.

139.    Defendant Hodges grieved his termination.

140. Defendant Hodges was reinstated by Defendant Brennan / USPS to employment with USPS.

141. After reinstatement, Defendant Hodges was placed at the Las Cruces Post Office, where he remained until recently transferring to the Truth or Consequences Post Office.

142. Defendant Hodges did not have to compete for at least two of the above three positions.

143. Despite the fact that other employees enjoyed certain privileges of employment, Plaintiff was punished for the incidents that occurred and for her opposition to discrimination, harassment and retaliation.

144. Plaintiff's supervisor, Steve Manning, ignored her and failed to provide information to her, which is evidence of discrimination, retaliation, and harassment.

145. For instance, Mr. Manning did not inform HR that Plaintiff was in a nonpay/LWOP status so that she could explore her health insurance options.

146. Also, Mr. Manning did not provide DRAC paperwork to Plaintiff, including her job description and packet of information, until May 18, 2017, approximately 3 months after the DRAC meeting, thereby depriving her of her right to fully participate in the DRAC process.

147. Mr. Manning never responded to Plaintiff's request for administrative leave.

148. Lerene Wiley (HR, Labor Relations) was aware of Plaintiff's accommodation requests, administrative leave requests, DRAC committee proceedings regarding reasonable accommodations, and other issues.

149. Ms. Wiley failed to act on any of Plaintiff's requests or the other issues surrounding her case, instead choosing to ignore Plaintiff.

150.    The only communication Plaintiff received from Ms. Wiley was a letter dated May 9, 2017, in which she summarily and without explanation agreed with the decision of the District Reasonable Accommodation Committee dated "April 2, 2017" (which was not provided to Plaintiff on April 2, 2017), even though Plaintiff told the DRAC committee that she was not provided the necessary paperwork for the meeting.

151.    Ms. Wiley agreed with the DRAC committee and sided against Plaintiff, without any due process to Plaintiff.

152.    Ms. Wiley's actions (as well as the actions of her employer, Defendant Brennan / USPS) have delayed Plaintiff's disability retirement application and have caused other monetary and non-monetary damages.

153.    Defendant Ponce was aware of Plaintiff's accommodation requests, administrative leave requests, DRAC committee proceedings regarding reasonable accommodations, and other issues.

154.    Defendant Ponce failed to act on any of Plaintiff's requests or the other issues surrounding Plaintiff's case, instead choosing to ignore Plaintiff.

155.    Plaintiff did receive an inadvertent email from a USPS attorney containing a confidential communication from Defendant Ponce to the USPS dated April 6, 2017, but Defendant Ponce never communicated directly with Plaintiff regarding the issues raised by Plaintiff.

156.    Defendant Ponce's intentional inaction further delayed Plaintiff's disability retirement application and has caused other monetary and non-monetary damages.

157.    Plaintiff effectively has been denied reasonable accommodations by the District Reasonable Accommodations Committee.

158.    Plaintiff attended an accommodation meeting with the Committee on February 8, 2017 and was told that she would receive a response within 3 weeks.

159.    A response from the DRAC committee was therefore due by March 1, 2017.

160.    Plaintiff did not receive any response from the DRAC committee until sometime after April 6, 2017.

161.    The failure of the DRAC committee to respond delayed Plaintiff's disability retirement application and has caused other monetary and non-monetary damages.

162.    Also, the DRAC committee's failure has resulted in additional damages due to failure to accommodate, and Plaintiff is now in LWOP status, resulting in further damages.

163.    As a result of the District Reasonable Accommodations Committee's inaction on Plaintiff's case, Plaintiff was deprived of the necessary paperwork for her disability retirement application.

164.    USPS supervisory employees John DiPeri and Gregory Graves were informed of Plaintiff's request for administrative leave.

165.    Given that Plaintiff's immediate supervisors did not respond to her requests for administrative leave, Plaintiff forwarded these requests to Mr. DiPeri and, after no response was received, Mr. Graves.

166.    No USPS employee has responded to Plaintiff's request for administrative leave in any meaningful way as of the filing of this Complaint.

167.    Plaintiff received a response from a USPS attorney stating that Plaintiff's attorneys were not to contact Mr. Graves, but no one ever provided a substantive response to Plaintiff's request for administrative leave.  This is evidence of discrimination, retaliation, harassment, and hostile work environment by Defendant Brennan / USPS.

168.    Plaintiff has been treated discriminatorily by the USPS Postal Inspectors and other USPS employees, while others have been treated more favorably.

169.    For instance, Plaintiff complained to Defendant Ponce / Upper Management / HR in May 2016 regarding the workplace assault that she experienced in April 2016, and (upon information and belief) the Postal Inspectors were not notified until July 2016, based on information provided to Plaintiff by another USPS employee.

170.    It then took the Postal Inspectors approximately 2 weeks after this time to contact Plaintiff (i.e., at least 6 weeks after the Postal Inspectors should have taken action).

171.    However, as evidence of discriminatory or retaliatory treatment, Defendant Hodges contacted the Postal Inspectors with a complaint of alleged harassment by one of Plaintiff's family members (which Plaintiff denies to have been harassment), and the Postal Inspector was at Plaintiff's house the following day.

172.    In other words, Plaintiff's complaints were treated with little to no respect, while the complaints of the wrongdoer were immediately addressed.  This is evidence of retaliation, discrimination, and harassment by the Postal Service towards Plaintiff.

173.    Because Plaintiff is on LWOP status, her health/dental/vision insurance premiums are not being met.

174.    Additionally, Plaintiff's supervisor has not given HR her LWOP status so that she can explore her alternative health insurance options, thus denying Plaintiff the opportunity to seek less expensive coverage.

175.    Plaintiff will have to pay at least $500 per month out of pocket towards healthcare expenses or seek these benefits elsewhere.

176.    This loss of insurance coverage is due to the delay in processing Plaintiff's administrative leave requests and requests for accommodation.  This is evidence of discrimination, retaliation, and harassment.

177.    Plaintiff has suffered extreme damages to date, including medical damages, loss of sick leave, loss of annual leave, loss of wages due to LWOP status, compensatory damages, damages due to failure to accommodate, incidental and consequential damages, other economic damages, attorney's fees, and costs.

178.    Plaintiff has suffered additional injuries due to the injuries inflicted by Heath Hodges and ratified by other employees associated with the United States Postal Service.  This includes, but is not limited to, (a) erosive gastritis and reactivation of the Epstein-Barr virus, as a result of the emotional distress and other stress-related factors; (b) increased susceptibility to illnesses, including increased frequency of urinary tract infections, kidney infections, muscle aches and pains, asthma, and headaches; (c) depression, including the need for psychiatric counseling and medication for the first time in her life; (d) anger, insomnia, marital problems, and separation from family and friends; (e) suicidal thoughts and actions; (f) social anxiety; and (g) other medical conditions directly related to the above injuries inflicted by Defendant Hodges and other USPS employees.

179.    Due to the above acts of discrimination and retaliation, as well as Defendant Hodges' tortious acts, Plaintiff has been effectively and/or constructively foreclosed from continuing her employment with USPS as of the present date.  However, Plaintiff is willing to return to work if medically or otherwise feasible.

180.    At the same time that Plaintiff has suffered extreme damages and a complete readjustment to daily life, Defendant Hodges has been given pay increases, including (upon information and belief) performance-based pay increases.

181.    Defendant Hodges has benefited from the wrongdoing he committed against Plaintiff, and Defendant Brennan / USPS has completely failed to hold Defendant Hodges accountable for his actions.

182.    Plaintiff continues to be discriminated against for the incidents that were committed against her and her resulting complaints of discrimination, while the person committing the wrongdoing (i.e. Defendant Hodges) continues to advance in his career. This is evidence of discrimination and retaliation on the part of Defendant Brennan / USPS.

183.    Since the EEO investigations have concluded, Plaintiff has suffered (and continues to suffer) additional damages directly relating to her EEO claims.  These damages are not necessarily new claims but damages directly related to her already-filed EEO claims.

184.    Additionally, Plaintiff has suffered damages in excess of the damages relating to her EEO claims, including claims under state and federal law, as more fully described below.

185.    Plaintiff fully incorporates all other factual allegations contained in both of the above-mentioned EEO investigative files by reference.

### Count I:  Sex Discrimination in Violation of
### Title VII of Civil Rights Act of 1964
### (Defendants Brennan / USPS, Hodges, Ponce and Oyer)

186.    Plaintiff hereby re-alleges and reincorporates all preceding allegations as if fully set forth herein.

187.    Defendants' conduct as alleged herein constitutes discrimination based on gender or sex in violation of Title VII of the Civil Rights Act of 1964, as amended.

188.    The stated reasons for Defendants' conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

189.    Additionally, Defendants' employment policies or practices had a disparate impact on persons of Plaintiff's gender/sex (female) and were not necessary to the operation of the United States Postal Service.

### Count II:  Harassment, Sexual Harassment, and Hostile Work Environment (Defendants Brennan / USPS, Hodges, Ponce and Oyer)

190.    Plaintiff hereby re-alleges and reincorporates all preceding allegations as if fully set forth herein.

191.    Plaintiff has been subjected to unwelcome conduct based on sex and retaliation. Specifically, the conduct was severe or pervasive enough to create a work environment that a reasonable person would perceive to be intimidating, hostile or abusive.

192.    Enduring the offensive conduct became a term or condition of Plaintiff's continued employment.

193.    Additionally, Plaintiff was effectively or constructively placed into an adverse employment action based on Defendants' conduct.

194.    The harassment and hostile work environment complained of was committed by Plaintiff's supervisor, as well as ratified by other USPS employees listed in this Complaint (including all named Defendants), from the time of the sexual assault against Plaintiff through the handling of the investigation of Plaintiff's claims.

195.    Additionally, given that submission to or rejection of Defendant Hodges' conduct was used as the basis for employment decisions by Defendant Brennan / USPS, Hodges, Ponce, and Oyer, Defendants are liable for quid pro quo harassment.

196.     Defendants' conduct as alleged herein constitutes sexual harassment and hostile work environment in violation of the Civil Rights Act of 1964, the Americans with Disabilities Act and/or the Rehabilitation Act.

### Count III: Disability Discrimination in Violation of
### The Americans with Disabilities Act and/or Rehabilitation Act of 1973
### (Defendant Brennan / USPS and Ponce)

197.     Plaintiff hereby re-alleges and reincorporates all preceding allegations as if fully set forth herein.

198.     Plaintiff is an employee with a qualified disability.

199.     Defendant's actions as described in this Complaint constitute disability discrimination in violation of the Americans with Disabilities act and/or, because Plaintiff is a federal employee, the Rehabilitation Act of 1973.

200.     Specifically, Plaintiff's employer failed to provide reasonable accommodation to Plaintiff's disability in a meaningful time and place, thus resulting in significant damage to Plaintiff.  Providing the reasonable accommodation would not have resulted in any undue hardship to Plaintiff's employer.

201.     Additionally, Defendant's discrimination against Plaintiff on the basis of disability has resulted in loss of pay, effective/constructive termination, layoff, lack of training, lack of benefits, and deprivation of other rights and privileges to which Plaintiff was entitled relating to her employment.

202.     Additionally, Defendant's discrimination against Plaintiff on the basis of disability has resulted in harassment or hostile work environment, under the same standards set forth in Count III above.

### Count IV:  Reprisal for Engaging in Protected Activities
### (Defendant Brennan / USPS, Hodges, Ponce, and Oyer)

203.    Plaintiff hereby re-alleges and reincorporates all preceding allegations as if fully set forth herein.

204.    Defendant's actions as described in this Complaint constitute reprisal or retaliation in contravention of the Civil Rights Act of 1964, the Americans with Disabilities Act, and/or the Rehabilitation Act.

205.    The protected activity includes, but is not limited to, all of the instances of protected activity as described in Plaintiff's EEO investigation files, including filing an EEO complaint; requesting an investigation of the sexual assault committed against her; communicating with a USPS supervisor or manager about employment discrimination, sexual assault, and harassment; resisting Defendant Hodges' sexual advances; reporting Defendant Hodges' activity to Defendant Ponce and being asked what she did to give Defendant Hodges the wrong impression; requesting a reasonable accommodation based on disability; and alleging disparate treatment against her employer based on gender.

206.    Additionally, Defendant's employment policies or practices had a disparate impact on persons of Plaintiff's protected status (retaliation) and were not necessary to the operation of the United States Postal Service.

### Count V:  Common-Law Sexual Assault and Sexual Battery
### (Defendant Hodges in His Individual Capacity Only)

207.    Plaintiff hereby re-alleges and reincorporates all preceding allegations as if fully set forth herein.

208.    Defendant Hodges physically touched Plaintiff in a sexual manner without Plaintiff's Consent.

209.   Defendant Hodges' conduct constitutes the tort of battery.

210.   Defendant Hodges committed one or more acts or menacing conduct which caused Plaintiff to reasonably believe that she was in danger of an immediate sexual battery.

211.   Defendant Hodges' conduct constitutes the tort of assault.

### Count VI:  Intentional Infliction of Emotional Distress
### (Defendant Hodges in His Individual Capacity Only)

212.   Plaintiff hereby re-alleges and reincorporates all preceding allegations as if fully set forth herein.

213.   The conduct of Defendant Hodges (prior to, during, and/or after the alleged sexual assault) was extreme and outrageous under the circumstances.

214.   Specifically, Defendant Hodges' conduct went beyond the bounds of common decency and was atrocious and intolerable to the ordinary person.

215.   Defendant Hodges acted intentionally and/or recklessly.

216.   As a result of Defendant Hodges' conduct, Plaintiff experienced severe emotional distress.

217.   The emotional distress was of such intensity and duration that no ordinary person would be expected to tolerate it.

218.   In addition to the actual sexual assault, Defendant Hodges engaged in further odious, perverse and outrageous conduct against Plaintiff *after* the sexual assault, thus entitling Plaintiff to additional relief under this Count of her Complaint.

### Jury Demand

219.   Plaintiff hereby requests a trial by a jury of her peers of 12 persons, for all claims that may be tried before a jury.

### Reservation of Right to File Federal Tort Claims Act Claim

220.    Plaintiff hereby notifies Defendants that Plaintiff reserves the right to file a claim under the Federal Tort Claims Act, after exhausting the administrative procedures required under the Act for any and all of the permitted torts under the Act for which Plaintiff has suffered damages.

### Request for Punitive Damages

221.    With regard to the harms committed by Defendant Hodges in his individual capacity, Defendant Hodges is liable to Plaintiff for punitive damages, based on the severity of Defendant Hodges' conduct and for the limited purpose of punishment and to deter others from committing similar offenses.

222.    With regard to the harms committed by Defendant's employer (Defendant Brennan / USPS), Plaintiff does not believe that punitive damages are available against the United States Government or its employees.  However, to the extent available, Plaintiff asserts her right to any and all punitive damages as may be available to her by law.

223.    Plaintiff reserves the right to request punitive damages against the other named Defendants if warranted by discovery, based on the severity of these persons' conduct and for the limited purposes of punishment and to deter others from committing similar offenses.

### Prayer for Relief

WHEREFORE, Plaintiff prays for all forms of relief available to her under Title VII, the Americans with Disabilities Act, the Rehabilitation Act, and the common law as applicable, including but not limited to the following:

1.  Back pay in all forms, including (but not limited to) lost wages, lost overtime opportunities, lost annual and sick leave, other lost benefits (including pension and

retirement benefits, Thrift Savings Plan contributions, cafeteria plan benefits, medical

benefits, life insurance benefits, and all other benefits);

2.  Front pay in all forms, including all forms listed above;

3.  Pre-judgment interest;

4.  Post judgment interest;

5.  Negative tax consequences;

6.  Reemployment at a future date (if feasible based on Plaintiff's medical condition);

7.   Compensatory damages up to and including the maximum extent provided by law

(believed to be $300,000, or a higher amount as permitted by law);

8.  Punitive damages to the extent allowed by law as to each Defendant separately;

9.  Medical damages, including (but not limited to) damages for emotional distress,

increased susceptibility to illness, and related damages;

10. Injunctive relief to prohibit the use of the unlawful employment practices committed

by USPS and/or Heath Hodges with regard to Plaintiff's employment;

11. Preliminary injunctive relief to prevent irreparable harm to Plaintiff;

12. Make-whole relief to the fullest extent provided by law;

13. Corrective action, including disciplinary action against any and all offending

employees, whether known or unknown as of the filing of this Complaint;

14. Reasonable attorney's fees and costs for violation of Plaintiff's statutory rights as

well as any and all other violations complained of in this Complaint;

15. Out-of-pocket expenses, incidental damages, and consequential damages;

16. Any and all damages contained in Plaintiff's investigative file, including damages

disclosed in Plaintiff's compensatory damages affidavits; and

17. Any and all other damages allowed by law.

Respectfully submitted,

**CARRILLO LAW FIRM, P.C.**

By _____

Raúl A. Carrillo, Jr. (raul@carrillolaw.org)
Steven E. Jones (sjones@carrillolaw.org)
Post Office Box 457
Las Cruces, New Mexico 88004-0457
(575) 647-3200 (office)
(575) 647-1463 (facsimile)
*Attorneys for Plaintiff*